Moses S. Bardavid (SBN 200296)
LAW OFFICES OF MOSES S. BARDAVID
15910 Ventura Boulevard
Suite 1405
Encino, CA 91436
Tel:  (818) 582-3463
Fax: (818) 582-3465

Attorneys for Defendant,
JOE ROZSA aka JOSEPH RICHARD ROZSA
aka JAY RICH VEYRON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| KEVIN ZHANG INC., a California corporation, and KEVIN ZHANG, an individual,<br><br>          Plaintiffs,<br>    v.<br><br>JOE ROZSA aka JOSEPH RICHARD ROZSA aka JAY RICH VEYRON, an individual, and DOES 1-10,<br><br>          Defendants. | Case No.:  2:20-cv-06247--SVW-AFM<br><br>Judge: Hon. Stephen V. Wilson<br><br>**DEFENDANT, JOE ROZSA'S NOTICE OF MOTION AND MOTION TO DISMISS COMPAINT WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(b)(2) & (6) AND SPECIAL MOTION TO STRIKE PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE, CODE OF CIVIL PROCEDURE SECTION 425.16; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; AND DECLARATION OF JOE ROZSA IN SUPPORT THEREOF**<br><br>*[Declarations in Support of Motion, Request For Judicial Notice, and Proposed Order Filed Concurrently Herewith]*<br><br><u>**Hearing**</u>:<br>Date:       October 5, 2020<br>Time:.      1:30 p.m.<br>Courtroom: 10A, 10th Floor<br><br>Complaint Filed: July 14, 2020 |

///

///

///

**TO ALL INTERESTED PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on October 5, 2020, at 1:30 p.m. in Courtroom 10A in the United States Courthouse located at 350 W. 1st Street, Los Angeles, California 90012, the Honorable Stephen V. Wilson presiding, Defendant JOE ROZSA ("Rozsa" or "Defendant") will and hereby does move to dismiss the complaint filed on July 14, 2020 by Plaintiffs KEVIN ZHANG INC. ("KZI") and KEVIN ZHANG ("Zhang" and collectively with KZI, the "Plaintiffs") on the grounds that the Complaint fails to  confer jurisdiction over the Defendant Federal Rule of Civil Procedure 12(b)(2), and fails state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant also moves to strike the First Through Seventh causes of action from Plaintiffs' Complaint pursuant to California Code of Civil Procedure Section 425.16 on the grounds that those claims arise out of protected activity and that Plaintiffs cannot meet their burden of showing a reasonable probability of success on the merits.

This Motion is based on this Notice of Motion and attached Memorandum of Points and Authorities, on all judicially noticeable documents, on all pleadings and papers on file in this action, and on other such matters and arguments as may be presented to this Court in connection with this Motion.

This Motion is made following the telephonic conference of counsel which took place on August 10, 2020.

Date: August 17, 2020                    **LAW OFFICES OF MOSES S. BARDAVID**

_____
Moses S. Bardavid, Esq.
Attorney for Defendant
JOE ROZSA

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

I.      INTRODUCTION…………...............................................................................1

     A.      THE CAUSE OF ACTION REGARDING PROTECTED SPEECH…………...............1

     B.      THE FRAUD FIDUCIARY DUTY CAUSES OF ACTION.......................................1

II.     SUMMARY OF PLAINTIFFS' ALLEGATIONS ...................................................2

     A.       PLAINTIFFS ENTER THE PUBLIC SPHERE VOLUNATIRLY AND BRAG ABOUT MR. ZHANG'S LIFE, BUSINESS, AND QUALIFICATIONS ON MULTIPLE PUBLIC FORUMS.....................................................................2

     B.       PLAINTIFFS FILE SUIT……………...........................................................2

     C.       PLAINTIFF'S PARENTS FILE SUIT……………......................................4

III.    APPLICABLE LEGAL STANDARDS .................................................................5

     A.      MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)………...........5

     B.      SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE, CAL. CIV. PROC. CODE § 425.16.......................................................5

IV.     PLAINTIFF'S COMPLAINT SHOULD BE STRICKEN FOR TARGETING CONDUCT PROTECTED UNDER CALIFORNIA'S ANTI-SLAPP STATUTE. .................................................7

     A.      PLAINTIFF'S CLAIMS TARGET CONDUCT PROTECTED BY THE ANTI-SLAPP STATUTE…………...................................................................7

     B.      PLAINTIFFS CANNOT ESTABLISH A REASONABLE PROBABILITY OF PREVAILING ON THE MERITS OF ITS CLAIMS.....................................................9

     C.      KEVIN ZHANG HAS PUBLICLY ADMITTED THAT HE USED A CREDIT CARD NOT BELONGING TO HIM, BUT BELONGING TO HIS FORMER EMPLOYER WITHOUT THE EMPLOYER'S PERMISSION IN ORDER TO FUND MR. ZHANG'S ECOMMERCE BUSINESS…………........................................10

     D.      PLAINTIFFS' FIRST CAUSE OF ACTION FOR DEFAMATION FAILS TO STATE A CLAIM…………......................................................................11

E.     PLAINTIFFS' SECOND CAUSE OF ACTION FOR TRADE LIBEL FAILS TO STATE A CLAIM………............................................................................14

F.     PLAINTIFFS' THIRD CAUSE OF ACTION FOR INVASION OF PRIVACY BY FALSE LIGHT FAILS TO STATE A CLAIM………...................................................15

G.     PLAINTIFFS' FOURTH CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS FAILS TO STATE A CLAIM………..........................................................................................16

H.     PLAINTIFFS' FIFTH CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE PROSPECTIVE ECONOMIC ADVANTAGE FAILS TO STATE A CLAIM………..........................................................................................17

I.     PLAINTIFFS' SIXTH CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE PROSPECTIVE ECONOMIC ADVANTAGE FAILS TO STATE A CLAIM………..........................................................................................17

J.     PLAINTIFFS' SEVENTH CAUSE OF ACTION FOR CIVIL HARASSMENT FAILS TO STATE A CLAIM………........................................................................19

K.     PLAINTIFFS' EIGHTH AND NINTH CAUSES OF ACTION FOR AIDING AND ABETTING, AND CONSPIRACY TO COMMIT BREACH OF FIDUCIARY DUTY FAIL TO STATE A CLAIM...........................................................................20

L.     PLAINTIFFS' TENTH CAUSE OF ACTION FOR CONSPIRACY TO COMMIT COMPUTER FRAUD FAILS TO STATE A CLAIM.............................................22

M.     THIS CASE SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(2)……....22

V.    CONCLUSION ........................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### STATE CASES

*American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*
(2002) 96 Cal. App. 4th 1017, 1044...........................................................................20

*American Master Lease LLC v. Idanta Partners, Ltd.*
(2014) 225 Cal.App.4th 1451, 1476...........................................................................21

*Ankeny v. Lockheed Missiles & Space Co.*
88 Cal. App. 3d 531, 537 (1979) ...............................................................................16

*Applied Equipment Copr. v. Litton Saudi Arabia Ltd.*
(1994) 7 Cal.4th 503,510-511.....................................................................................22

*Ashcroft v. Iqbal*
556 U.S. 662, 678 (2009) ..............................................................................................5

*Asia Investment Co. v. Borowski*
(1982) 133 C.A.3d 832, 840-841................................................................................17

*Baker v. L.A. Herald Exam'r*
(1986) 42 Cal.3d 254, 260....................................................................................11, 13

*Bank of the West v. Superior Court*
(1992) 2 Cal. 4th 1254, 1264, 1266...........................................................................18

*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*
(1997) 52 Cal. App. 4th 867,879................................................................................16

*Bell Atl. Corp. v. Twombly*
550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ...................................5

*Bhambra v. True*
No. C 09-4685 CRB, 2010 WL 1758895, at *2 (N.D. Cal. Apr. 30, 2010) ...............9

*Briscoe v. Reader's Digest Assn.*
(1971) 4 Cal.3d 529 543............................................................................................15

*Bronco Wine Co. v. Frank A. Logoluso Farms*
(1989) 214 Cal. App. 3rd 699, 704.............................................................................18

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
(1999) 20 Cal. 4th 163...............................................................................................18

*Chaker v. Mateo*
209 Cal.App.4th 1138 (2012) ....................................................................................13

*Choate v. County of Orange*
(2000) 86 Cal.App.4th 312, 333.................................................................................22

*City of Costa Mesa v. D'Alessio Investments, LLC*
    (2013) 214 Cal.App.4th 358, 376..................................................................................14

*City of Cotati v. Cashman*
    (2002) 29 Cal.4th 69,78.................................................................................................6

*Clark v. Superior Court*
    (2010) 50 Cal. 4th 605, 610.....................................................................................18, 19

*Cleveland v. Johnson*
    (2012) 209 Cal.App.4th 1315, 1338...........................................................................21

*Committee on Children's Television v. General Foods*
    35 Cal. 3d 197, 211 (1983) .......................................................................................18

*ComputerXpress, Inc. v. Jackson*
    (2001) 93 Cal.App.4th 993,999....................................................................................6

*Contacts, Inc. v. Steinberg*
    107 Cal. App. 4th 568, 592, 132 Cal. Rptr. 2d 789 (2003) ........................................20

*Cornelison v. Chaney*
    (1976) 16 Cal. 3d 143, 147, 127 Cal. Rptr. 352, 545 P.2d 264....................................23

*Cortez* v. *Purolator Air Filtration Products Co.*
    (2000) 23 Cal. 4th 163, 173.......................................................................................19

*Daniels-Hall v. National Education Association*
    629 F.3d 992, 998 (9th Cir. 2010) ...............................................................................5

*Data Disc, Inc. v. Sys Tech. Assoc.*
    557 F.2d 1280, 1286 (9th Cir 1977) ...........................................................................23

*Della Penna v. Toyota Motor Sales, U.S.A.*
    11 Cal. 4th 376, 393 (Cal. 1995) ...............................................................................17

*Dowling v. Zimmerman*
    85 Cal. App. 4th 1400, 1425 (2001) ............................................................................6

*Duncan v. Stuetzle*
    (1996) 76 F 3rd 1480, 1490........................................................................................18

*Eisenberg v. Alameda Newspapers* (1999)
    74 Cal.App.4th 1359, 1385, fn. 13...............................................................................15

*Fellows v. Nat'l Enquirer, Inc.*
    42 Cal. 3d 234, 238–39 (1986) ...................................................................................15

*Forsher v. Bugliosi*
    (1980) 26 Cal.3d 792, 803..........................................................................................13

///

*Global Telemedia Internat., Inc. v. John Doe 1*
    (C.D.Cal. 2001) 132 F.Supp.2d 1261, 1267 (Global Telemedia) .........................................12

*Hofmann Co. v. E. I. du Pont de Nemours & Co.*
    (1988) 202 Cal. App. 3d 390, 397...............................................................................................15

*Holomaxx Techs. v. Microsoft Corp.*
    783 F. Supp. 2d 1097, 1107 (N.D. Cal. 2011) ......................................................................15

*In re Moeller*
    466 B.R. 525, 531 (Bankr. S.D. Cal. 2012) ............................................................................5

*J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP*
    (2016) 247 Cal.App.4th 87, 97....................................................................................................15

*Kahn v. Bower*
    (1991) 232 Cal.App.3d 1599, 1612, fn. 5, 284 Cal.Rptr. 244...................................................4

*Kasky v. Nike, Inc.*
    (2002) 27 Cal. 4th 939,950............................................................................................................19

*Kennedy Funding, Inc. v. Chapman*
    No. C 09-01957 RS, 2010 WL 4509805, at *5 (N.D. Cal. Nov. 1, 2010) ...........................15

*Khoury v. Maly's of California, Inc.*
    (1992) 14 Cal. App. 4th 612, 619..............................................................................................18

*Korea Supply Co. v. Lockheed Martin Corp.*
    (2003) 29 Cal.4th 1134, 1153, 1144 .....................................................................................17, 18

*Krinsky v. Doe 6*
    (2008) 159 Cal.App.4th 1154, 1162 [72 Cal. Rptr. 3d 231] (Krinsky) ..............................12

*LaMonte v. Sanwa Bank California*
    (1996) 45 Cal. App. 4th 509, 517..............................................................................................20

*Love v. Associated Newspapers*, Ltd.
    611 F.3d 601, 608 (9th Cir. 2010) ...........................................................................................23

*Madrid v. Perot Systems Corp.*
    (2005) 130 Cal. App. 4th 440, 441............................................................................................19

*Makaeff v. Trump Univ., LLC*
    715 F.3d 254, 262 (9th Cir. 2013) ..............................................................................................8

*Maloney v. T3Media, Inc.*
    853 F.3d 1004, 1009 n.3 (9th Cir. 2017) ...................................................................................7

*Maloney v. T3Media, Inc.*
    94 F. Supp. 3d 1128, 1134 (C.D. Cal. 2015) .............................................................................7

///

*Manor Investment Company v. F. W. Woolworth Co.*
  (1984) 159 Cal.App.3d 586, 595.................................................................................22

*Maranatha Corrections, LLC v. Dept. of Corrections and Rehabilitation*
  (2008) 158 Cal.App.4th 1075, 1083.............................................................................6

*Martinez v. Metabolife International, Inc.*
  (2003) 113 Cal.App.4th 181, 188.................................................................................6

*Masson v. New Yorker Magazine*
  (1991) 501 U.S. 496, 510, Ill S .Ct. 2419, 115 L.Ed.2d 447.......................................8

*Marzec v. Public Employees' Retirement System*
  (2015) 236 Cal.App.4th 889........................................................................................21

*Milkovich v. Lorain Journal Co.*
  497 U.S. 1, 20 (1990) .................................................................................................12

*Mosier v. Southern California Physicians Ins. Exchange*
  (1998) 63 Cal. App. 4th 1022, 1044...........................................................................20

*Navarro v. Block*
  250 F.3d 729, 732 (9th Cir. 2001) ...............................................................................5

*Nasrawi v. Buck Consultants LLC*
  (2014) 231 Cal.App.4th 328, 343...............................................................................21

*Navellier* v. *Sletten*
  (2002) 29 Cal.4th 82, 88..............................................................................................6

*New Show Studios LLC v. Needle*
  No. 2:14-CV-01250-CAS-MRWx, 2014 U.S. Dist. LEXIS 90656 (C.D. Cal. Dec. 29,
  2014...............................................................................................................................9

*Nicosia v. De Rooy*, 72
  F.Supp.2d 1093 (N.D. Cal. 1999) ...............................................................................13

*Nygard, Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027, 1042 (2008) ...........................................................................7

*Okun v. Superior Court*
  (1981) 2 Cal.3d 442, 454............................................................................................22

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*
  (1990) 50 Cal.3d 1118, 1126 (PG&E) ........................................................................16

*Papasan v. Allain*
  478 U.S265, 286 (1986) ...............................................................................................5

*People* v. *McKale*
  (1979) 25 Cal. 3rd 626, 635........................................................................................18

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.,*
    946 F. Supp. 2d 957, 967–69 (N.D. Cal. 2013)...................................................................8

*Rogers v. Home Shopping Network, Inc.*,
    57 F. Supp. 2d 973, 982 (C.D. Cal. 1999) ........................................................................7

*Rosenauer v. Scherer*
    88 Cal.App.4th 260, 280 (2001)…………………………………………………………13

*Savage v. Pacific Gas & Electric Co.*
    (1993) 21 Cal. App. 4th 434, 445 ..................................................................................12

*Seelig v. Infinity Broadcasting Corp.*
    97 Cal. App. 4th 798, 808, 809 (2002) .........................................................................12

*Sher v. Johnson*
    911 F.2d 1357, 1360, 1361 (9th Cir. 1990) ...................................................................23

*Shores v. Chip Steak Co.*
    (1955) 130 Cal.App.2d 627, 630....................................................................................15

*Slovensky v. Friedman*
    142 Cal. App. 4th 1518 (2006) ......................................................................................20

*Smith v. Silvey*
    (1983) 149 Cal.App.3d 400, 407....................................................................................19

*Standing Commission on Discipline v. Yagman*
    55 F.3d 1430, 1440 (9th Cir. 1995) ...............................................................................13

*Stanley v. Richmond*
    35 Cal. App. 4th 1070 (1995) ........................................................................................20

*State Farm Fire & Cas. Co. v. Superior Court*
    (1996) 45 Cal. App. 4th 1093, 1105...............................................................................17

*State of California ex rel. Metz v. CCC Information Services, Inc.*
    (2007) 149 Cal.App.4th 402, 419...................................................................................22

*Summit Bank v. Rogers*
    (2012) 206 Cal. App. 4th 669, 696,699..........................................................................12

*Tamkin v. CBS Broad., Inc.*
    193 Cal. App. 4th 133 (2011) ..........................................................................................7

*Trindade v. Reach Media Group, LLC*
    (N.D.Cal July 31, 2013, No. 12-CV-4759-PSG) 2013 U.S.Dist.LEXIS 107707.................16

*U.S. ex rel Newsham v. Lockheed Missiles & Space Co.*
    190 F.3d 963, 972 (9th Cir. 1999) .................................................................................6

*///*

*Van de Kamp v Bank of America*
    (1988) 204 Cal. App. 3d 819...............................................................20

*Van Ness v. Blue Cross*
    87 Cal. App. 4th 364, 376-77 (2001) ...............................................18

*Vess v. Ciba-Geigy Corp. USA* .........................................................................9

*White v. Valenta*
    (1965) 234 Cal.App.2d 243, 254........................................................11

*Wilbanks v. Wolk*
    121 Cal. App. 4th 883, 890, 898–901 (2004) ......................................8

*Winchester Mystery House, LLC v. Global Asylum, Inc.*
    (2012) 210 Cal. App. 4th 579, 596-597................................................16

*Wolf v. Superior Court*
    (2003) 107 Cal.App.4th 25, 29...........................................................21

*Wong v. Tai Jing*
    189 Cal. App. 4th 1354, 1366 (2010) .................................................7

*World-Wide Volkswagen Corp. v. Woodson*
    (1980) 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 ...............23

*Xcentric Ventures, LLC v. Bird*
    683 F. Supp. 2d 1068, 1074 (D. Ariz. 2010) ......................................23

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*
    433 F.3d 1199, 1205 (9th Cir. 2006) ..................................................22

**STATUTES**

Fed. R. Civ. P. 4(k)(1)(A) ...............................................................................22

Fed. R. Civ. P. 12(b)(6) ....................................................................................5

Fed. R. Civ. P. 12(b)(2) ...................................................................................22

Cal. Civ. Proc. Code § 425.16...........................................................................5

Cal. Civ. Proc. Code § 425.16 (a) ......................................................................5

Cal. Civ. Proc. §425.16 (b) ...............................................................................5

Cal. Civ. Proc. § 425.16 (e) ...............................................................................6

Cal. Civ. Code, § 44.........................................................................................11

Civ. Code, § 45................................................................................................11

Civ. Code, § 46.................................................................................................................11

18 USC Section 1030(a)(5)(B) ........................................................................................22

317 F.3d 1097, 1110 (9th Cir. 2003) ................................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs KEVIN ZHANG INC. ("KZI") and KEVIN ZHANG ("Zhang" and collectively with KZI, the "Plaintiffs") have filed a Complaint cynically calculated to punish Defendant JOE ROZSA ("Rozsa" or "Defendant") for his speech on a matter of public interest.

#### A.   The Causes of Action Regarding Protected Speech

Defendant is entitled to relief under the anti-SLAPP statute because, as demonstrated below, (1) the First through Seventh causes of action attack protected speech–namely, speech regarding a subject of public interest—and (2) Plaintiffs cannot show a reasonable probability of prevailing on those causes of action.

Plaintiffs publicly advertise Mr. Zhang as an eCommerce guru and brag about Mr.Zhang's "experience" and "qualifications" in eCommerce. Plaintiffs highlight Zhang's "accomplishments" and attempt to derive a following based thereon. When Mr. Rozsa disagreed with Mr. Zhang's public representations of himself and criticized Mr. Zhang on YouTube, using and quoting other videos Mr. Zhang was in, Plaintiffs, rather than relying on the power of speech to persuade, fabricated this lawsuit in order to retaliate against Mr. Rozsa's protected speech, and to suppress Mr. Rozsa from publishing videos that Mr. Zhang voluntarily appeared in, because the videos contain portions whereupon Mr. Zhang shows himself in a bad light.

#### B.   The Fraud Fiduciary Duty Causes of Action

The Eighth through Tenth causes of action fail to state causes of action and lack requisite specificity. These causes of action are all based upon vague allegations that Mr. Rozsa did an unknown thing, at an unknown period in time to somehow encourage an anonymous individual, DOE Defendant No. 1, referenced in the Complaint as "Consultant" to allegedly take some unauthorized actions upon Plaintiffs' Facebook Group. The Eighth through Tenth causes of action are so wholly lacking in any specificity, that it is impossible for Mr. Rozsa to ascertain the who, what, where when and why of the allegations made against him.

///

///

## II.   SUMMARY OF PLAINTIFF'S ALLEGATIONS

### A.   Plaintiffs Enter the Public Sphere Voluntarily and Brag About Mr. Zhang's Life, Business, and Qualifications on Multiple Public Forums

Plaintiffs voluntarily chose to enter into a public forum on a matter of public interest, deliberately publicizing and advertising Mr. Zhang as an eCommerce Guru, and advertising KZI's product "Ecom Millionaire Mastery". (Exhibit 1; see. https://www.kevinzhang.com/free-training-register-2)

Plaintiffs' website proudly proclaims that Mr. Zhang is a public figure who has appeared in various well known publications such as Forbes, Yahoo! Finance, MSNBC, and Entrepreneur. (Exhibit 1.) Plaintiffs also highlight and brag about Zhang's appearances in media, and encourage that Mr. Zhang be contacted for interviews and speaking engagements. (Exhibit 2; see https://www.kevinzhang.com/)

Plaintiffs loudly publicize Mr. Zhang's life story and further publicly publicize pictures of Mr. Zhang's "house in the Hollywood Hills." (Exhibit 2.) The pictures of Zhang's "house in the Hollywood Hills" even include exterior photos of the home as well as the neighborhood. (Exhibit 2.) Mr. Zhang's alleged claim to fame is that his business went from $0.00 to $20,000,000.00 in one (1) year. (Exhibit 3; see https://www.instagram.com/kevinzhangofficial/?hl=en) To put it simply, Mr. Zhang is a voluntary public figure that intentionally makes numerous public representations regarding his person, his history, his background, his financial status, and his business acumen. (Exhibits 1 & 2.) These claims are made as advertising for Plaintiffs' business and are subject to the scrutiny of the general public. Mr. Zhang does the same on his own YouTube channel. (See, https://www.youtube.com/channel/UCyI0ZEz8H6fCCNKXwyoviFQ.)

Plaintiffs publications intend to inform the general public about eCommerce, online business, and drop shipping. Plaintiffs acknowledge the existence of many scam businesses in the drop shipping realm, and allegedly attempt to make the general public wary of scams while simultaneously espousing that Plaintiffs businesses are not a scam but in fact legitimate. Plaintiffs go on to publicize Mr. Zhang as an individual who can instruct individuals on how to create eCommerce "Brands that Crush" unlike "Other 'Gurus'" who teach people to "Build Brands that Scam." (Exhibit 1.) Thus,

Plaintiffs have intentionally and willfully made Mr. Zhang's allegations as well as his promise that he runs and can instruct others on how to run legitimate businesses and not scam business an issue for public debate.

Mr. Rozsa questioned Plaintiffs representations and allegations. Mr. Rozsa then investigated Mr. Zhang's allegations and formed opinions regarding these claims *based upon videos wherein Mr. Zhang voluntarily appeared*. Mr. Rozsa uploaded three (3) separate YouTube videos (the "Rozsa Videos") wherein he questions and counters the claims made publicly by Plaintiffs regarding Mr. Zhang's successes and qualifications.

**B. Plaintiffs File Suit**

The Complaint now before the Court was previously brought in the Los Angeles Superior Court on May 21, 2020 (Exhibit 4) and subsequently dismissed by Plaintiffs on July 14, 2020 (Exhibit 5). The same say that the State Court action was dismissed, Plaintiffs filed the instant matter.

Both the dismissed State complaint and the current Complaint allege causes of action allegedly arising from statements made in the videos posted by Mr. Rozsa on YouTube. Plaintiffs' lawsuit claims that Mr. Rozsa made certain statements in the videos. However, the majority of the alleged statements made by Mr. Rozsa are not quoted verbatim in the Complaint. Plaintiffs place quotation marks around some of the alleged statements and fail to place quotation marks around the vast majority of the alleged statements. Based upon Plaintiffs' decision to place quotes around some of the alleged statements, it is clear the alleged statements that are lacking quotation marks are not in fact word for word statements made by Mr. Rozsa, but merely Plaintiffs' summaries or interpretations on what was allegedly said. Specifically pages 7 and 8 of the Complaint contain a "list" of statements somehow included in or inferred from the Rozsa Videos. The distinction between actual statements and inferences or synopsis of statements is of utmost importance in causes of action that are based upon different theories of defamation. Only three (3) of the twenty-four (24) statements credited to Mr. Rozsa in the Complaint are alleged by Plaintiffs to be direct quotes of what Mr. Rozsa stated in the videos. (Complaint 7:15 – 7:7:28; 8:1 – 8:24.)

The only direct quotes that Plaintiffs allege Rozsa made in the videos are that Zhang[1] 1) "likes to cheat and lie" (Complaint, 8:11), 2) has "a complete lack of regard for humanity"[2] (Complaint, 8:20), and 3) "deserve[s]" to be "punch[ed] in the fucking face" (Complaint, 8:23). "The general rule is that the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint. [Citations.]" (*Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1612, fn. 5.)

Based upon the wording of the Complaint and its intentional vagueness, it is clear that Plaintiffs' motivations for this lawsuit are clearly not to seek redress for "harm" but to use Plaintiffs' the courts to bludgeon Mr. Rozsa in order to stop Mr. Rozsa from exercising his inherent and inalienable free speech rights.

**C.  Plaintiff's Parents File Suit**

Plaintiffs' vengeful motivation is further evidenced by the fact that Mr. Zhang's parents Zhaorog Zhahan and Jinrong Wang ("Zhang's Parents") on or about July 20, 2020, six (6) days after this Complaint was filed in the Federal Court, filed another complaint for libel and false light in Illinois alleging that Mr. Rozsa was the mastermind of a RICO action filed by an attorney not in the employ of Mr. Rozsa and a third-party plaintiff whom Mr. Rozsa never met. (Exhibit 6.)  Mr. Rozsa was not involved in the RICO litigation as a party or as a witness. (Exhibit 7.) Nonetheless Zhang's parents allege that Mr. Rozsa is liable for the tort of publishing a complaint, which is in the public record, on the interned. (Exhibit 6, p. 9, ¶ 37.)

///

///

**III.  APPLICABLE LEGAL STANDARDS**

**A.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim." (*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).) "To survive a motion to dismiss, a complaint must contain

---

[1] "That Zhang" is not a quote attributed to Mr. Rozsa as Plaintiffs have not placed that phrase in quotation marks, but merely an inference or conclusion made by Plaintiffs.

[2] In the Complaint Plaintiffs infer that this statement is implying, in addition to what is quoted, "that Zhang is sub-human and cruel, such that any harm which may come to him … is justified." (Complaint, 8:20 – 8:22.) How Plaintiffs reached this conclusion from the alleged statement is not made clear.

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).) "In practice…a complaint 'must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory"… [and t]he plaintiff, thus, must provide grounds for an entitlement for relief, which  requires more than labels and conclusions, and, again, the actions must be based on legally  cognizable rights of action." (*In re Moeller*, 466 B.R. 525, 531 (Bankr. S.D. Cal. 2012).)  A complaint must contain more than "a formulaic recitation of the elements of a cause of action." (*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).) It must contain "*enough facts* to state a claim to relief that is plausible on its face." (*Id.* at 570, 127 S.Ct. 1955 (emphasis added).) The Court does not, however, accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." (*Daniels-Hall v. National Education Association*, 629 F.3d 992, 998 (9th Cir. 2010).) Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." (*Papasan v. Allain,* 478 U.S. 265, 286 (1986).)

## B. Special Motion to Strike Pursuant to California's Anti-SLAPP Statute, Cal. Civ. Proc. Code § 425.16

The driving purpose of California's anti-SLAPP statute is to encourage the "continued participation in matters of public significance" and to combat lawsuits that "chill the valid exercise of the constitutional right of freedom of speech" through "abuse of the judicial process." (Cal. Civ. Proc. Code § 425.16(a).) Accordingly, Code of Civil Procedure section 425.16 provides for a special motion to strike causes of action that arise from an act "in furtherance of the person's right of petition or free speech ... in connection with a public issue." (Code Civ. Proc. §425.16, subd. (b).) Such acts include:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing *made in connection with an issue under consideration or review by* a legislative, executive, or *judicial body*, or any other official proceeding authorized by law, (3) any written or oral statement or writing *made in a place open to the public or a public forum in connection with an issue of public interest*, or (4) any other conduct *in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.*

(Cal. Code Civ. Proc. § 425.16 (e), emphasis added.)

Courts, including Federal Courts sitting in diversity, must apply and construe the anti-SLAPP statute broadly to protect the rights of defendants. (*Id*. § 425.16(a); see also *Dowling v. Zimmerman*, 85 Cal. App. 4th 1400, 1425 (2001) (noting the statute is meant to provide "a swift and effective remedy to SLAPP suit defendants"); *U.S. ex rel Newsham v. Lockheed Missiles & Space Co*., 190 F.3d 963, 972 (9th Cir. 1999) (applying anti-SLAPP statute in diversity case because of its "important [and] substantive" legal protections).) The Court "shall" strike any causes of action arising from such acts unless the plaintiff establishes a probability of prevailing on the merits. (Code Civ. Proc. § 426.16, subd. (b)(1).) In ruling on an anti-SLAPP motion, the statute "*shall* be construed broadly" so as to "encourage continued participation in matters of public significance." (Code Civ. Proc. § 425.16, subd. (a), emphasis added; *Maranatha Corrections, LLC* v. *Dept. of Corrections and Rehabilitation* (2008) 158 Cal.App.4th 1075, 1083.)

A special motion to strike under section 425.16 requires a two-part analysis. First, the moving defendant must show that the alleged SLAPP action arose from protected activity within the meaning of the statute. Second, if the defendant satisfies that threshold requirement, the burden shifts to the plaintiff to make a prima facie factual showing which, if the trier of fact found credible, would sustain a judgment for the plaintiff. *(Navellier* v. *Sletten (2002)* 29 Cal.4th 82, 88; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993,999.) "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability-and whether that activity constitutes protected speech of petitioning." *(Navellier, supra,* 29 Ca1.4th at 92 (emphasis in original).) Thus, the court must examine the principal thrust or predominant nature of a plaintiff's cause of action in determining whether the anti-SLAPP statute applies. *(Martinez v. Metabolife International, Inc.* (2003) 113 Cal.App.4th 181, 188; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69,78.)

///

In Federal Court diversity actions, a plaintiff's burden at this second stage depends on the nature of the defendant's challenge. If the challenge is based on legal defects on the face of the pleadings, the court's analysis is analogous to that on a Rule 12(b)(6) motion to dismiss. (*Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999).) If the challenge is based

on a lack of evidence to substantiate the plaintiff's claims, the court's analysis is analogous to that on a motion for summary judgment under Rule 56. (*See id.* at 982–83.) Here, Mr. Rozsa moves to strike Plaintiffs' claims based on legal defects evident on the face of the Complaint, thus the same standard applies for Mr. Rozsa's anti-SLAPP motion as for a motion to dismiss under Rule 12(b)(6).[3]

## IV.   PLAINTIFF'S COMPLAINT SHOULD BE STRICKEN FOR TARGETING CONDUCT PROTECTED UNDER CALIFORNIA'S ANTI-SLAPP STATUTE.

### A.   Plaintiff's Claims Target Conduct Protected by the Anti-SLAPP Statute.

The anti-SLAPP statute applies to Plaintiffs' causes of action One through Seven because all seven are based on protected "oral statement[s]" made in "a public forum in connection with an issue of public interest." (Cal. Civ. Proc. Code § 425.16(e)(3).)

The statements at issue appear in on videos on YouTube, a site readily accessible to the public at large. Statements that appear on websites accessible to the public at large are "made in . . . a public forum" under the anti-SLAPP statute. (See, e.g., *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 n.3 (9th Cir. 2017); *Wong v. Tai Jing,* 189 Cal. App. 4th 1354, 1366 (2010).) (collecting cases).

Even websites where a defendant has total control over the content are considered public. "Even though Defendant controls the content of [the accused website] with no ability for members of the public to express their viewpoint, the website is part of the internet at-large, and Defendant's posts were made in a public forum." (See *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1134 (C.D. Cal. 2015); see also 853 F.3d 1004 (affirming decision).)

Mr. Rozsa's statements also concern an "issue of public interest." An "issue of public interest" includes "*any issue in which the public is interested*." (*Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (emphasis in original).) In *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133 (2011), the court of appeal concluded that the creation and broadcast of an episode of the TV show *CSI* was a matter of "public interest" because "the public was demonstrably interested," as evidenced by "the posting of the casting synopses on various Web sites and the ratings for the episode." (*Id.* at 143.) Here, the public similarly was demonstrably interested in the issues raised by Mr. Rozsa's

---

[3] Plaintiffs' claims would fail under either standard, Mr. Rozsa reserves his right to supplement his anti-SLAPP motion should it become appropriate for the Court to undertake a Rule 56 analysis.

videos. Members of the public commented on the videos and other YouTube creators have made videos about Mr. Zhang. In fact, Plaintiffs preemptively made themselves the topics of public interest by publishing Mr. Zhang's "accomplishments" and lifestyle on multiple media. Plaintiffs have intentionally made Mr. Zhang a public figure and a celebrity. The issues dealt with in the videos are investigations into assertions made by Plaintiffs to their "over 40,000 subscribers on YouTube" and "99,000 followers on Instagram." (Complaint 5:24 – 5:25.)  Mr. Rozsa's expression of his opinions furthered the anti-SLAPP law's goal of promoting participation in public debate. (See, *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 808 (2002) (recognizing "encourag[ing] participation … in vigorous public debate" as a goal of the anti-SLAPP.) When the plaintiff is a public figure or limited public figure, plaintiff must also prove malice. (*Masson v. New Yorker Magazine* (1991) 501 U.S. 496, 510, Ill S .Ct. 2419, 115 L.Ed.2d 447.)

Mr. Rozsa's videos also relate to "an issue of public interest" because they provide alternative information to consumers regarding Mr. Zhang. Courts regularly hold that such "consumer protection information" constitutes protected speech in connection with an issue of public interest. See, e.g., *Makaeff v. Trump* Univ., LLC, 715 F.3d 254, 262 (9th Cir. 2013) (internet postings accusing plaintiff of fraudulent and deceptive business practices were protected); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 890, 898–901 (2004) (website cautioning consumers about doing business with plaintiff and alleging that plaintiff is "unethical" and "provided incompetent advice" were protected); *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc*., 946 F. Supp. 2d 957, 967–69 (N.D. Cal. 2013)  (posting on website "Ripoff Reports" warning of negative experiences as customer of plaintiff qualified for protection under first anti-SLAPP prong despite being wholly fabricated), *aff'd*, 609 F. App'x 497 (9th Cir. 2015).

Courts tend to find that criticisms of business practices to be a matter of public interest where a large number of people potentially will be affected by the plaintiff's conduct. (*See Wilbanks*, 121 Cal. App. 4th at 898; *New Show Studios LLC v. Needle*, No. 2:14-CV-01250-CAS-MRWx, 2014 U.S. Dist. LEXIS 90656 (C.D. Cal. Dec. 29, 2014).) In *New Show Studios*, plaintiffs unsuccessfully argued that the defendants' statements criticizing plaintiffs' business practices did not relate to a matter of public interest because they concerned only a "small, specific audience—New Show's clients." The

court rejected that argument, in part because it was undermined by "plaintiffs' own admission" that "New Show has thousands of clients and potential clients." (*Id.*) Similarly, in this matter Plaintiff alleges that he has "over 40,000 subscribers on YouTube" and "99,000 followers on Instagram." (Complaint 5:24 – 5:25.)

Because Plaintiffs' claims target conduct protected by the anti-SLAPP statute, the first prong of the anti-SLAPP analysis is met.

B. **Plaintiffs Cannot Establish a Reasonable Probability of Prevailing on the Merits of Its Claims.**

Plaintiffs cannot meet their burden under the second prong of the anti-SLAPP analysis to establish a reasonable probability of prevailing on the merits because Plaintiffs fail to state any legally cognizable claim that is plausible on its face, as shown below. A successful Rule 12(b)(6) motion demonstrates that a plaintiff cannot meet its burden under the second anti-SLAPP prong. In *Robinson v. Alameda Cty.*, 875 F. Supp. 2d 1029 (N.D. Cal. 2012), the court determined that separately analyzing the second anti-SLAPP prong was unnecessary after having already ruled in the defendant's favor on a concurrently filed Rule 12(b)(6) motion. (*Id.* at 1050.) A successful motion to dismiss amply demonstrates that the plaintiff "cannot show probability of success on the merits" of the dismissed claims. (*Id.*) Likewise, in *Vess v. Ciba-Geigy Corp. USA*, the Ninth Circuit held that its affirmance of the district court's Rule 12(b)(6) dismissal meant that the plaintiff could not demonstrate a probability of prevailing on his claim and therefore also affirmed the district court's grant of the concurrently filed anti-SLAPP motion. 317 F.3d 1097, 1110 (9th Cir. 2003) . *See also Bhambra v. True*, No. C 09-4685 CRB, 2010 WL 1758895, at *2 (N.D. Cal. Apr. 30, 2010) (holding that plaintiff whose claim has been dismissed with prejudice under Rule 12(b)(6) "has by definition failed").

C. **Kevin Zhang has Publicly Admitted that he Used a Credit Card Not Belonging to Him, But Belonging to His Former Employer Without the Employer's Permission in Order to Fund Mr. Zhang's eCommerce Business.**

Mr. Rozsa's first video and some of the opinions formed therein are based, in part, upon two videos starring Mr. Zhang. The first is an interview conducted by an AdLeaks personality, Justin

Brenner ("Brenner") of Mr. Zhang. During a part of the interview, Mr. Brenner asks Mr. Zhang about how Mr. Zhang acquired a three hundred thousand dollar ($300,000) credit line to begin his business (see, https://radiopublic.com/advertise-everything-by-adleaks-WdPx7A/s1!10007, at minute(s) 43:20 - 44:52.) A true correct transcript of the relevant portion of the interview is provided herewith and attached hereto as <u>Exhibit 8</u>. The relevant position of the video states as follows:

> **Justin Brenner:** You get $300,000 in the credit line your parents cosign for credit cards or?
> **Kevin Zhang:** No, so uh, I don't know if it's totally legal, so I guess I am going to disclose it. I had a corporate card for my internship right, so I worked at like a big consulting firm and as a part of that you get like a corporate credit card and we were supposed to cancel our corporate credit cards at the end of the internship and I knew I was going to do this entrepreneurship thing so I just like decided to not cancel it secretly and I funded my business with that credit card. I mean I paid everything off so like everything's okay right, um but that credit card essentially had like no limit because it was a corporate loan it's like a billion-dollar company that is obviously backing it up.
> **Justin Brenner:** And they didn't notice that?
> **Kevin Zhang:** So, they actually cancelled the card in January like this past January I got a letter in the mail like dude like we cancelled your card you know you totally don't work with us. I mean I guess I survived on it for like six months, but um I was very proactive so you know once you have revenues you can go to a bank and you can get a credit card…
> **Justine Brenner:** Oh sure
> **Kevin Zhang:** So, by that I already had alternatives, but yeah, I was super lucky that I was able to do that. I mean it was scrappy right, every day I remember like… you know it's wrong, you know it's wrong but it's just like fuck we have to do it. I mean what else am I going to do right. Um so that's, that's how I did it.

(<u>Exhibit 8</u>.)

Mr. Rozsa also discussed an instructional video posted on YouTube by Mr. Zhang, which is still live on YouTube (https://www.youtube.com/watch?v=cTP6zy9mMDg&t=451s,, at minute 7:31 - 11:00) wherein Mr. Zhang discusses how to use Photoshop to remove "the Chinese logo" on items that will be drop shipped (<u>Exhibit 9</u>).

Mr. Rozsa's opinions about how the law might apply to Mr. Zhang's actions and admissions as disclosed by Mr. Zhang in the videos cannot form the basis of a defamation claim because they neither expressly nor impliedly communicate "provably false assertions of fact." (*Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1065 (9th Cir. 1998).) Defamation requires the "existence of a falsehood." (*Baker v. L.A. Herald Exam'r*, 42 Cal. 3d 254, 259 (1986) (quoting *Old Dominion Branch No. 496,*

*Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 283 (1974)).) The offending statement alleged in a defamation matter must "expressly or impliedly assert a fact that is susceptible to being proved false." (*Coastal Abstract Serv., Inc. v. First Am. Title Ins*. Co., 173 F.3d 725, 730 (9th Cir. 1999) (quoting *Weller v. Am. Broad. Cos*., 232 Cal. App. 3d 991, 1001 (1991).)

Mr. Rozsa's opinions, as set forth in Plaintiffs' Complaint, cannot expressly assert a fact that is susceptible to being proved false, because California law holds that statements interpreting an unsettled question of law are statements of opinion rather than statements of fact. Mr. Rozsa provided the factual basis for his opinions and encouraged viewers to do their own research as to the matter.

### D.  **Plaintiffs' First Cause of Action for Defamation Fails to State a Claim**

Plaintiffs' first cause of action for defamation fails to state a claim. A defamatory communication may be characterized either as libel or slander. (Cal. Civ. Code, § 44.) The traditional distinction between libel and slander is that libel is written and slander is spoken. Libel today is defined as a defamatory publication communicated "by *writing, printing, picture, effigy, or other fixed representation to the eye* . . . ." (Civ. Code, § 45, italics added.) Slander is "*orally uttered, and also communications by radio or any mechanical or other means* . . . ." (Civ. Code, § 46, italics added (hereafter section 46).) Television broadcasts are treated as slander in California. (See *White v. Valenta* (1965) 234 Cal.App.2d 243, 254.) A YouTube video must be looked upon as analogous to a television broadcast and thus the Defamation claim should be analyzed under the Slander rubric.

When compared to the definition of libel, "the limited nature of the tort of slander [is] apparent. Only certain types of oral statements are presumed injurious; to recover for any other utterances, actual damage must be pleaded and proved.  [Citation.]"  (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 551, p. 807.)

///

Expressions of opinion do not fall within the category of "false" statements for purposes of libel and slander. (*Savage v. Pacific Gas & Electric Co*. (1993) 21 Cal. App. 4th 434, 445; see also, *Summit Bank v. Rogers* (2012) 206 Cal. App. 4th 669, 696. Thus, "'rhetorical hyperbole,' 'vigorous epithet[s],' 'lusty and imaginative expression[s] of ... contempt,' and language used 'in a loose, figurative sense' have all been accorded constitutional protection." *Seelig v. Infinity Broadcasting*

*Corp.* (2002) 97 Cal. App. 4th 798, 809.) "Consequently, courts have frequently found the type of name calling, exaggeration, and ridicule ... to be nonactionable speech." (*Summit Bank v. Roger*s (2012) 206 Cal. App. 4th 669, 699.)

Courts have found that expressions on "online blogs" should be viewed no differently are places for debate and hyperbole, not necessarily fact.

> Not only commentators, but courts as well have recognized that online blogs and message boards are places where readers expect to see strongly worded opinions rather than objective facts. (See *Krinsky v. Doe 6* (2008) 159 Cal.App.4th 1154, 1162 [72 Cal. Rptr. 3d 231] (*Krinsky*) ["[t]he use of a pseudonymous screen name offers a safe outlet for the user to experiment with novel ideas, express unorthodox political views, or criticize corporate or individual behavior without fear of intimidation or reprisal"]; *Global Telemedia Internat., Inc. v. John Doe 1* (C.D.Cal. 2001) 132 F.Supp.2d 1261, 1267 (*Global Telemedia*) [finding Internet postings "are full of hyperbole, invective, short-hand phrases and language not generally found in fact-based documents, such as corporate press releases or SEC filings"].)

(*Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 697.)

Plaintiffs cannot prevail on her First Cause of Action for Defamation because it targets expression that is the type of classic hyperbole and opinion that is absolutely privileged under the First Amendment and not subject to defamation analysis. In the course of responding to Plaintiffs' public representations, Mr. Rozsa is alleged to have said that that Zhang 1) "likes to cheat and lie" (Complaint, 8:11), 2) has "a complete lack of regard for humanity" (Complaint, 8:20), and 3) "deserve[s]" to be "punch[ed] in the fucking face" (Complaint, 8:23). These statements, in the context the Complaint describes, cannot be defamatory because the First Amendment provides absolute protection to statements that cannot "reasonably [be] interpreted as stating actual facts" but instead amount to "imaginative expression" or "rhetorical hyperbole." (*Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20 (1990).) Under this doctrine, courts have repeatedly rejected defamation claims leveled against accusations of dishonesty or other misbehavior whose context shows them to be part of a vivid debate and not intended as literal assertions of fact.

In *Rosenauer v. Scherer*, 88 Cal.App.4th 260, 280 (2001), an anti-SLAPP order was upheld where the defendant called plaintiff a "thief" and "liar" because, as the court explained, the language was "the type of loose, figurative, or hyperbolic language that is constitutionally protected." In *Standing Commission on Discipline v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995), the term

"dishonest" was held protected opinion, because it was "used to convey the low esteem" in which the defendant lawyer held a judge, not as a literal allegation of dishonesty. "Where a publication sets forth the facts underlying its statement of opinion . . . and those facts are true, the Constitution protects that opinion from liability for defamation." (*Id.*)

This type of rhetoric is especially unlikely to be taken as literally true statements of fact in the context of internet/YouTube responses. See, *Chaker v. Mateo*, 209 Cal.App.4th 1138 (2012) (affirming anti-SLAPP order where online insults were properly understood as opinion; surveying California cases establishing that online expression more likely to be taken as opinion than fact); *Nicosia v. De Rooy*, 72 F.Supp.2d 1093 (N.D. Cal. 1999) (granting anti-SLAPP motion and motion to dismiss where "readers are less likely to view statements as assertions of fact" in context of web site's claims of misconduct).

The twenty-four (24) statements allegedly credited to Mr. Rozsa in the Complaint that are not direct quotes, are not statements allegedly made by Mr. Rozsa, but instead interpretations made by the Plaintiffs. (Complaint 7:15 – 7:7:28; 8:1 – 8:24.) Unfortunately for the Plaintiffs, it is for the Court to interpret what was ***actually*** said to determine if it forms a basis for slander.

"In determining whether a statement is libelous we look to what is ***explicitly stated*** as well as what insinuation and implication can be reasonably drawn from the communication." (*Forsher v. Bugliosi* (1980) 26 Cal.3d 792, 803, emphasis added.) "California courts have developed a 'totality of the circumstances' test to determine whether an alleged defamatory statement is one of fact or of opinion. First, ***the language of the statement is examined***. For words to be defamatory, they must be understood in a defamatory sense." (*Baker v. L.A. Herald Exam'r* (1986) 42 Cal.3d 254, 260, emphasis added.) Aside from the three (3) statements provided in quotes, the "language of the statement" and "what is explicitly stated" cannot be examined, because the statements are not provided, thus the Court cannot perform the examination to determine whether any of the twenty-four (24) unquoted statements rise to the standard of slander.

### E.  Plaintiffs' Second Cause of Action for Trade Libel Fails to State a Claim

Trade libel is the publication of matter disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner. [Citation.] The tort encompasses 'all false statements concerning the quality of services or product of a business which are intended to cause that business financial

harm and in fact do so.' [Citation.] [¶] To constitute trade libel, a statement must be false."

(*City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 376.)

Plaintiffs' cause of action for trade libel fails for the same reasons, as argued above. Plaintiffs' claims are based upon protected speech. However, the trade libel cause of action also fails because none of the statements alleged to have been made by Mr. Rozsa are directed at Plaintiffs' product. The quoted statements refer to Mr. Zhang himself, and even the other alleged statements, that are just Plaintiffs' interpretations of statements and not direct quotes, do not reference Plaintiffs' product "Ecom Millionaire Mastery". (Complaint 7:15 – 7:25; 8:1 – 8:24.)

In fact, Plaintiffs' owns disclaimer regarding their own product states much more to the public than what Mr. Rozsa is alleged to have relayed. On Plaintiffs' webpage, Plaintiffs, when speaking about their product state:

DISCLAIMER: Kevin Zhang is a professional. His results, and those of his top students, are not typical. Their experiences are not a guarantee you will make money. You may make more, less or the same. Kevin is not implying you'll duplicate his results (or do anything for that matter). Kevin has the benefit of practicing e-commerce and advertising for 18 months, and has an established following as a result.

The average person who buys any "how to" information gets little to no results. Any references are for example purposes only. Your results will vary and depend on many factors …including, but not limited to, your background, experience, and work ethic. All business entails risk as well as massive and consistent effort and action. If you're not willing to accept that, please DO NOT WATCH THIS TRAINING.

At the end of the training, Kevin will be making an offer for people who want to work more closely with him and his team to get help with implementing what they learn on the training and more. This is completely optional. The training lasts about 120 minutes and if you don't want to work more closely with Kevin, you can leave without buying anything. The training will be holding NOTHING back and you'll be able to implement what you learn right away on your own.

(Exhibit 2.)

"To constitute trade libel the statement must be made with actual malice, that is, with knowledge it was false or with reckless disregard for whether it was true or false." (*J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP* (2016) 247 Cal.App.4th 87, 97.) "The distinction between libel and trade libel is that the former concerns the person or reputation of plaintiff and the latter relates to his goods." (*Shores v. Chip Steak Co.* (1955) 130 Cal.App.2d 627, 630)

If respondents' statements about appellant are opinions, the cause of action for trade libel must of course fail. 'Under the First Amendment there is no such thing as a false

idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.

(*Hofmann Co. v. E. I. du Pont de Nemours & Co.* (1988) 202 Cal. App. 3d 390**,** 397, footnote and internal citation omitted.)

### F. Plaintiffs' Third Cause of Action for Invasion of Privacy by False Light Fails to State a Claim

"When a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action." (*Eisenberg v. Alameda Newspapers* (1999) 74 Cal.App.4th 1359, 1385, fn. 13, internal citations omitted.) "[A] 'false light' cause of action 'is in substance equivalent to . . . [a] libel claim, and should meet the same requirements of the libel claim . . . including proof of malice.' " (*Briscoe v. Reader's Digest Assn*. (1971) 4 Cal.3d 529 543, internal citation omitted.)

"The New York Times decision defined a zone of constitutional protection within which one could publish concerning a public figure without fear of liability. That constitutional protection does not depend on the label given the stated cause of action; it bars not only actions for defamation, but also claims for invasion of privacy." (*Reader's Digest Assn., Inc. v. Superior Court* (1984) 37 Cal.3d 244, 265, internal citations omitted.)

Because the defamation action cannot be sustained, and because the false light cause of action must be examined under the lens of the defamation cause of action, the false light cause of action must also fail.

A false light claim may be "maintained only by individuals" under California law. (*See Fellows v. Nat'l Enquirer, Inc.*, 42 Cal. 3d 234, 238–39 (1986); *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1107 (N.D. Cal. 2011); *Kennedy Funding, Inc. v. Chapman*, No. C 09-01957 RS, 2010 WL 4509805, at *5 (N.D. Cal. Nov. 1, 2010) ("[A]s a LLC, Newport cannot state a claim for false light . . . .").

### G. Plaintiffs' Fourth Cause of Action for Intentional Interference with Contractual Relations Fails to State a Claim

Five elements must be alleged to support a claim for intentional interference with contractual relations. They are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the

-15-

contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Pacific Gas & Electric Co. v. Bear Stearns & Co*. (1990) 50 Cal.3d 1118, 1126 (PG&E).) Plaintiffs' Complaint does not adequately establish the existence of contracts, the terms of the contracts, the interference upon same contracts, and that Mr. Rozsa had any knowledge of the alleged contracts or the parties involved in the contracts.

It is well established that "a cause of action for intentional interference with contractual relations requires an underlying enforceable contract." (*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*, (1997) 52 Cal. App. 4th 867,879.) Plaintiffs allege the existence of "contractual relations" and "agreements" in the vaguest terms, but do not provide any specificity as to the contracts, their terms, the parties involved, and the legality and enforceability of the alleged contracts. Without pleading specifics, Plaintiffs cannot allege that Mr. Rozsa had the requisite knowledge to interfere with the hypothetical contracts.

It is not enough for a Plaintiffs to allege knowledge in conclusory terms, rather, a plaintiff must allege facts showing that the defendant was aware of both the existence and terms of the underlying contracts. (See, *Winchester Mystery House, LLC v. Global Asylum, Inc*., (2012) 210 Cal. App. 4th 579, 596-597.)  "It is settled law that a pleading must allege facts and not conclusions, and that material facts must be alleged directly and not by way of recital." (*Ankeny* v. *Lockheed Missiles & Space Co.,* 88 Cal. App. 3d 531, 537 (1979)); *see Trindade v. Reach Media Group, LLC* (N.D.Cal. July 31, 2013, No. 12-CV-4759-PSG) 2013 U.S.Dist.LEXIS 107707, at *52-53.) (granting motion to dismiss interference claim where complaint included "bare" allegation of generalized knowledge of underlying contractual relationship).

### H. Plaintiffs' Fifth Cause of Action for Intentional Interference Prospective Economic Advantage Fails to State a Claim

A claim for intentional interference with prospective economic advantage must allege (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the

-16-

relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153.)

To establish a claim for intentional interference with prospective economic advantage, a plaintiff must plead that the defendant engaged in an independently wrongful act—an act that is unlawful or is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard. (*Id.* at 1158-59.)

"[A]n essential element of the tort of intentional interference with prospective business advantage is the existence of a business relationship with which the tortfeasor interfered. (*Asia Investment Co. v. Borowski* (1982) 133 C.A.3d 832, 840-841). "[A] plaintiff seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself."  (*Della Penna v. Toyota Motor Sales, U.S.A.*, 11 Cal. 4th 376, 393 (Cal. 1995).)

As with the Intentional Interference with Contractual Relations cause of action, Plaintiffs fail to establish the prospective contractual relations, the basis for the relations, the parties involved, the interference, and Mr. Rozsa's knowledge of the alleged contracts or the parties involved in the contracts. Plaintiffs make conclusory statements that relationships were harmed but give no specifics.

## I.  Plaintiffs' Sixth Cause of Action for Intentional Interference Prospective Economic Advantage Fails to State a Claim

Statutory unfair competition differs from common law unfair competition in that the statutory cause of action extends to unfair and deceptive business practices and limits relief to injunction and restitution. (*State Farm Fire & Cas. Co. v. Superior Court*, (1996) 45 Cal. App. 4th 1093, 1105; see *Bank of the West v. Superior Court* (1992) 2 Cal. 4th 1254, 1264; *Bronco Wine Co. v. Frank A. Logoluso Farms* (1989) 214 Cal. App. 3rd 699, 704; see also *Duncan v. Stuetzle* (1996) 76 F 3rd 1480, 1490.)

To plead a violation of the "unlawful" prong of the UCL, the complaint must allege facts showing that a practice violates the law. "[W]ithout supporting facts demonstrating the illegality of a rule or regulation, an allegation that it is in violation of a specific statute is purely conclusory and

insufficient to withstand demurrer." (*People* v. *McKale* (1979) 25 Cal. 3rd 626, 635.) A plaintiff alleging unfair business practices under the unlawful prong must state with reasonable particularity the facts supporting the statutory elements of the violation.  (*Khoury v. Maly's of California, Inc.* (19992) 14 Cal. App. 4th 612, 619.)

The court in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal. 4th 163, stated "[w]hen a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.(*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal. 4th 163.)

It is axiomatic that, where a complaint fails to state a violation of an underlying law, no unfair competition claim will lie. *Van Ness v. Blue Cross*, 87 Cal. App. 4th 364, 376-77 (2001) (secondary claims such as unfair competition fall with main claim); *Khoury v. Maly's* of California, 14 Cal. App. 4th 612, 619 (1993) (dismissal of other claims results in dismissal of unfair competition claim). In order to state a claim for a "fraudulent business practice" arising under Bus. & Prof. § 17200, the claimant must plead and prove that members of the "public"" were likely to be deceived. (*Committee on Children's Television v. General Foods*, 35 Cal. 3d 197, 211 (1983).)

It is well established that **no damages of are recoverable under the UCL.** (*Clark v. Superior Court,* (2010) 50 Cal. 4th 605, 610; *Korea Supply Co. v. Lockheed Martin Corp.,* (2003) 29 Cal 4th 1134, 1144; *Bank of the West v. Superior Court,* (1992) 2 Ca1. 4th 1254, 1266.  Business & Professions Code § 17203 limits the relief available under the UCL to that "necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Rather, "[i]n a private unfair competition law action, the remedies are generally limited to injunctive relief and restitution." (*Clark* v. *Superior Court, supra,* 50 Cal. 4th at 610; *Kasky* v. *Nike, Inc.,* (2002) 27 Cal. 4th 939,950. "[a] UCL action ... is not an all-purpose substitute for a tort or contract action." (*Cortez*

v. *Purolator Air Filtration Products Co.,* (2000) 23 Ca1. 4th 163, 173.) .  Plaintiffs seek restitution. "[R]estitution' means the return of money to those persons from whom it was taken." (*Madrid* v. *Perot Systems Corp.* (2005) 130 Cal. App. 4th 440, 441.) Plaintiffs do not allege that any money was taken or that Defendant received money belonging to Plaintiffs.  Plaintiffs instead allege that it has allegedly lost money due to Defendant's actions.

### J.   **Plaintiffs' Seventh Cause of Action for Civil Harassment Fails to State a Claim**

California Code of Civil Procedure 527.6 sets forth an expedited manner to obtain injunctions, much like restraining orders, when there is no familiar relationship between the parties. The Code section has its own time limitations and its own definitions. Moreover, it is not intended to impede Constitutionally protected speech. The section is met to protect an individual from  "a 'clear and present danger' sufficient to merit this broad an injunction." In the matter before the Court, Mr. Rozsa's alleged "activities do not constitute a 'serious substantive evil' to a right or interest having equal dignity and protection with First Amendment liberties." (*Smith v. Silvey* (1983) 149 Cal.App.3d 400, 407, citations omitted.)

The relevant portions of Code of Civil Procedure Section 527.6 state:

(a)(1) A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section.
…
**(b)** For purposes of this section, the following terms have the following meanings:
**(2)** "Credible threat of violence" is a knowing and willful statement or course of conduct that would place a reasonable person in fear for the person's safety or the safety of the person's immediate family, and that serves no legitimate purpose.
**(3)** "Harassment" is unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner.
**(g)** Within 21 days, or, if good cause appears to the court, 25 days from the date that a petition for a temporary order is granted or denied, a hearing shall be held on the petition. ***If a request for a temporary order is not made, the hearing shall be held within 21 days, or, if good cause appears to the court, 25 days, from the date that the petition is filed***.
(Cal Code Civ Proc § 527.6)

The Complaint was filed on July 14, 2020. The Plaintiffs sought both a temporary and permanent restraining order. More than twenty-one days have lapsed and the matter has not come for hearing before the Court. By its own nature, Plaintiffs' cause of action under this section has expired.

**K. Plaintiffs' Eighth and Ninth Causes of Action for Aiding and Abetting, and Conspiracy to Commit Breach of Fiduciary Duty Fail to State a Claim**

The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach. (*Slovensky v. Friedman*, 142 Cal. App. 4th 1518 (2006); *see also Stanley v. Richmond*, 35 Cal. App. 4th 1070 (1995); *Mosier v. Southern California Physicians Ins. Exchange* (1998) 63 Cal. App. 4th 1022, 1044.) Breach of fiduciary duty is a tort that by definition may be committed by only a limited class of persons." (*1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 592, 132 (2003).)

The absence of any element is fatal to the cause of action. (*LaMonte v. Sanwa Bank California* (1996) 45 Cal. App. 4th 509, 517.) The burden of proving each of the requisite elements of breach of fiduciary duty is entirely upon the plaintiff. (See, e.g, *LaMonte* at p. 517 [holding that "[t]he [plaintiff] has the initial burden of proving the existence of a fiduciary duty and the [defendant's] failure to perform [under the duty]"]; *Van de Kamp v Bank of America* (1988) 204 Cal. App. 3d 819). Assuming a duty and a breach, a plaintiff still must prove that he or she suffered damages as a result of a breach of fiduciary duty. (CACI § 605; *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal. App. 4th 1017, 1044-1045 (plaintiff required to establish as an element of its case that it suffered damage as a result of defendants' breach of fiduciary duty). Breach of fiduciary duty is a tort that by definition may be committed by only a limited class of persons." (*1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 592, 132 Cal. Rptr. 2d 789 (2003).)

"A fiduciary relationship is ' " 'any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of

the other party without the latter's knowledge or consent. . . .' " ' " (*Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 29.)

"Whether a fiduciary duty exists is generally a question of law. Whether the defendant breached that duty towards the plaintiff is a question of fact." (*Marzec v. Public Employees' Retirement System* (2015) 236 Cal.App.4th 889.)

" '[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." (*Cleveland v. Johnson* (2012) 209 Cal.App.4th 1315, 1338.)

There is no statutory provision setting forth that an employee is a fiduciary of an employer. Plaintiff makes the conclusory allegation that Consultant is a fiduciary, but no basis for same is made.

"The elements of a claim for aiding and abetting a breach of fiduciary duty are: (1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff. (Judicial Council of Cal., Civ. Jury Instns. (CACI) (2014) No. 3610 . . .)." (*Nasrawi v. Buck Consultants LLC* (2014) 231 Cal.App.4th 328, 343.)

"[C]ausation is an essential element of an aiding and abetting claim, i.e., plaintiff must show that the aider and abettor provided assistance that was a substantial factor in causing the harm suffered." (*American Master Lease LLC v. Idanta Partners, Ltd*. (2014) 225 Cal.App.4th 1451, 1476.) Plaintiffs do not plead any causation.

Aiding and abetting, though different from civil conspiracy contains many similar elements. Herein Plaintiff alleges three separate causes of action for aiding and abetting and civil conspiracy, but does not actually seek relief for the central tort.

Civil conspiracy is not a tort but rather a legal doctrine for the Imposition of co-equal liability on participants in an agreement to commit a separate tort. (e.g. *Choate v. County of Orange* (2000) 86 Cal.App.4th 312, 333; *Applied Equipment Copr. V. Litton Saudi Arabia Ltd*. (1994) 7 Cal.4th 503, 510-511,) It is improper to plead aiding and abetting and civil conspiracy as an independent cause

of action. Plaintiffs attempt to plead same but fail to plead the essential elements of the underlying tort and fail to include specific facts as to the parties to the alleged conspiracy and aiding and abetting. Conspiracy is a theory of vicarious liability under which certain parties may be held liable for torts committed by others. The attempt is to include all parties to a conspiracy as jointly liable for tortious act committed by the other in furtherance of the conspiracy. *(Okun v. Superior Court* (1981) 2 Cal.3d 442, 454.)

The complaint must allege acts creating a conspiracy and also allege facts that give rise to a tortious cause of action that was the end product of the conspiracy. Conspiracy to commit a tort without the performance of the underlying tort is meaningless. *(Manor Investment Company v. F. W. Woolworth Co.* (1984) 159 Cal.App.3d 586, 595.). Conclusory allegations of a "conspiracy" will not withstand demurrer. *(State of California ex rel. Metz v.* CCC *Information Services, Inc.* (2007) 149 Cal.App.4th 402, 419.)

**L.   Plaintiffs' Tenth Cause of Action for Conspiracy to Commit Computer Fraud Fails to State a Claim**

18 USC Section 1030(a)(5)(B) states that a person is violates the code section if the "intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage." Plaintiffs again seek damages against Mr. Rozsa, but do not seek damages as to the act itself against the party that allegedly committed the act. As stated above, the complaint must allege acts creating a conspiracy and also allege facts that give rise to a tortious cause of action that was the end product of the conspiracy.

**M.   This Case Should Be Dismissed Pursuant to Rule 12(b)(2)**

Under Rule 12(b)(2), a defendant may move for dismissal based on lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Where there is no applicable federal statute governing personal jurisdiction, "the district court applies the law of the state in which the district court sits. *(Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1205 (9th Cir. 2006); see Fed. R. Civ. P. 4(k)(1)(A).) Thus, there are two limitations on a federal court's power to exercise personal jurisdiction over a nonresident defendant: the applicable state personal jurisdiction rule and

constitutional principles of due process. (*Sher v. Johnson*, 911 F.2d 1357, 1360 (9th Cir. 1990) (citing Data Disc, Inc. v. Sys Tech. Assoc., 557 F.2d 1280, 1286 (9th Cir 1977)).)

California's personal jurisdiction rule provides that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10 (1989). Accordingly, in California, the statutory limitation on a court's personal jurisdiction is "coextensive with the outer limits of due process," and the federal and state jurisdictional inquiries merge into a single analysis. (*Sher*, 911 F.2d at 1361; Yahoo!, 433 F.3d at 1205; Cal.Code Civ. Pro. § 410.10.)

"The plaintiff bears the burden of demonstrating that jurisdiction is appropriate." (*Love v. Associated Newspapers*, Ltd., 611 F.3d 601, 608 (9th Cir. 2010).) When the motion to dismiss is based on arguments presented in the parties' briefing papers, "the plaintiff need only make a prima facie showing of jurisdictional facts."

The protection against inconvenient litigation is described in terms of "reasonableness" and "fairness"; the nonresident defendant's contacts with the forum state must be such that maintenance of the suit does not offend traditional notions of fair play and substantial justice; thus, the relationship between the defendant and the forum must be such that it is reasonable to require the defendant to defend the particular suit which is brought there ( *World-Wide Volkswagen Corp. v. Woodson (1980)* 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 ; *see also*   *Cornelison v. Chaney (1976) 16 Cal.* 3d 143, 147, 127 Cal. Rptr. 352, 545 P.2d 264 ).

Courts have held that, that the mere location of injury does not support personal jurisdiction over a non-resident defendant. (*See, e.g.*, *Xcentric Ventures, LLC v. Bird*, 683 F. Supp. 2d 1068, 1074 (D. Ariz. 2010).) Instead, it must be shown that the defendant expressly aimed its conduct towards the forum. (*See id.*) Here, Plaintiffs do not allege that Mr. Rozsa expressly targeted his conduct towards California. Accordingly, Plaintiffs have failed to allege any facts supporting personal jurisdiction over Rozsa, in fact, minimum contacts is not even alleged. Plaintiffs make conclusory allegations without a single fact in support.

## V.    <u>CONCLUSION</u>

MOTION TO DISMISS COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amendment is futile when "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." (*Bonanno v. Thomas* (9th Cir. 1962) 309 F.2d 320, 322.) Accordingly, Defendant requests that the Complaint be dismissed without leave to amend.

Date: August 17, 2020                    **LAW OFFICES OF MOSES S. BARDAVID**

_____

Moses S. Bardavid, Esq.
Attorney for Defendant
JOE ROZSA

-24-

Moses S. Bardavid (SBN 200296)
LAW OFFICES OF MOSES S. BARDAVID
15910 Ventura Boulevard
Suite 1405
Encino, CA 91436
Tel:  (818) 582-3463
Fax: (818) 582-3465

Attorneys for Defendant,
JOE ROZSA aka JOSEPH RICHARD ROZSA
aka JAY RICH VEYRON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| KEVIN ZHANG INC., a California corporation, and KEVIN ZHANG, an individual,<br><br>        Plaintiffs,<br><br>  v.<br><br>JOE ROZSA aka JOSEPH RICHARD ROZSA aka JAY RICH VEYRON, an individual, and DOES 1-10,<br><br>        Defendants. | Case No.:  2:20-cv-06247--SVW-AFM<br><br>Judge: Hon. Stephen V. Wilson<br><br>**[PROPOSED] ORDER ON MOTION TO DISMISS COMPAINT WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(b)(2) & (6) AND SPECIAL MOTION TO STRIKE PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE, CODE OF CIVIL PROCEDURE SECTION 425.16.**<br><br>*[Memorandum of Points and Authorities, Declarations in Support of Motion, and Request For Judicial Notice filed concurrently herewith.]*<br><br>**Hearing**:<br>Date:      October 5, 2020<br>Time:.     1:30 p.m.<br>Courtroom: 10A, 10th Floor<br><br>Complaint Filed: July 14, 2020 |

*///*

*///*

*///*

-1-

The hearing on Joe Rozsa's ( "Defendant") Motion to Dismiss the Complaint (the "Complaint") filed by Kevin Zhang Inc., and Kevin Zhang (the "Plaintiffs") came for hearing before the Court.

The Court having read and considered: the Motion and all papers filed in support thereof, any timely opposition filed by Plaintiffs, the files and records in the case, having found that notice of the Motion was adequate and proper, and good cause appearing, it is hereby:

**ORDERED THAT**:

1.    The Motion to Dismiss is granted in whole without leave to amend; and

2.    The matter is hereby dismissed.


# # #

**PROOF OF SERVICE**

  I am over the age of eighteen years and not a party to the within action.  The business address at which I work is 15910 Ventura Boulevard, Suite 1405, Encino, CA 91436.

  On August 17, 2020, I served the within document(s) on the interested parties in this action described as follows: The **MOTION TO DISMISS COMPLAINT WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(b)(2) & (6) AND SPECIAL MOTION TO STRIKE PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE, CODE OF CIVIL PROCEDURE SECTION 425.16; DECLARATION IN SUPPORT OF MOTION; REQUEST FOR JUDICIAL NOTICE; AND PROPOSED ORDER**

   **BY MAIL -** I caused such envelope, with first-class postage thereon fully prepaid, to be deposited in a recognized place of deposit of the U.S. mail for collection and mailing to the office/residence of the addressee(s) noted below and on the date shown above following ordinary business practices.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

   **BY FEDERAL EXPRESS -** I caused each such envelope to be delivered by Federal Express mail service to the addresses(s) noted below.

[X]  **BY ELECTRONIC MAIL -** I caused a true copy thereof to be transmitted via electronic mail to the addresses listed below in accordance with CCP 1016.6.

   **BY PERSONAL SERVICE -** I **(delivered) caused** each document identified herein to be delivered by hand to the addressee(s) noted below.

| ADDRESSEE(S)/ADDRESS(ES) | |
|---|---|
| PAUL N. SORRELL (BAR NO. 126346)<br>MARTIN HIRSHLAND (BAR NO. 322629)<br>LAVELY & SINGER<br>PROFESSIONAL CORPORATION<br>2049 Century Park East, Suite 2400<br>Los Angeles, California 90067-2906<br>**psorrell@lavelysinger.com**<br>**mhirshland@lavelysinger.com** | |

  I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

  Executed on August 17, 2020, at Los Angeles, California.

*Ofelya Mamyan*

Digitally signed by Ofelya Mamyan
DN: cn=Ofelya Mamyan, o, ou,
email=asst.bardavidlaw@gmail.co
m, c=US
Date: 2020.08.17 18:24:20 -07'00'

OFELYA MAMYAN

**PROOF OF SERVICE**